WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
1133 Westchester Avenue
White Plains, New York 10604-3407
Tel.:  (914) 872-7104
Fax:   (914) 323-7001
David L. Tillem, Esq.
Daniel B. Fix, Esq.

*Attorneys for GF55 Partners and Marjory Rossin*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x

| | |
|---|---|
| In re: | Case No. 18-42804 (NHL) |
| | Chapter 7 |
| CHRISTOPHER L. SHANE, | |
| Debtor. | |

------------------------------------------------------------------- x

| | |
|---|---|
| GF55 PARTNERS and MARJORY ROSSIN a/k/a, MARJORY GROSS a/k/a MARJORY FUTTERMAN, | Adv. Proc. No. 18- |
| Plaintiff, | |
| -against- | |
| CHRISTOPHER L. SHANE a/k/a CHRISTOPHER LAWRENCE SHANE a/k/a CHRISTOPHER SHANE, | |
| Defendant. | |

------------------------------------------------------------------- x

### COMPLAINT OF GF55 PARTNERS AND MARJORY ROSSIN OBJECTING TO DISCHARGEABILITY OF DEBTS PURSUANT TO 11 U.S.C. sec 523(a) (4)

Plaintiffs, GF55 PARTNERS ("GF55") and MARJORY ROSSIN ("Rossin"

collectively, the "Plaintiffs"), creditors herein, by their attorneys Wilson Elser Moskowitz

Edelman & Dicker LLP, as and for their complaint (the "Complaint") against the

defendant/debtor CHRISTOPHER L SHANE a/k/a CHRISTOPHER LAWRENCE

SHANE a/k/a CHRISTOPHER SHANE (the "Debtor" or the "Defendant" or "Shane"), upon knowledge of its own and her acts and upon information and belief with respect to all other matters, alleges as follows:

## JURISDICTION AND VENUE

1. This adversary proceeding is brought pursuant to Rule 7001, et seq. of the Federal Rules of Bankruptcy Procedure seeking relief pursuant to sec 523(a) (4) of Title 11 of the United States Code, the Bankruptcy Code, objecting to the dischargeability of damages and debts owed by Shane to Plaintiffs, pursuant to his criminal convictions on three counts of grand larceny in the second degree in violation of New York Penal Law § 155.40(1) and Judgments of Restitution (as defined below) based on his fraud and deceit, intentional misrepresentation, conversion, larceny, embezzlement and willful and malicious injury to the economic and legal interests of Plaintiffs.

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334.

3. This is a core proceeding pursuant to 28 U.S.C. §157(b) (2). Venue is proper before this Court pursuant to 28 U.S.C. §1409.

## PARTIES

4. Plaintiff, GF55, is a partnership organized under the Laws of New York. Founded in 1984, the firm is a partnership of David E. Gross ("Gross"), Leonard Fusco ("Fusco"), and Shay Alster ("Alster") (collectively the "GF55 Partners") and is dedicated to the practice of architecture and interior design. GF55 maintains its principal place of business at 19 West 21st Street, New York, New York 10010.

5. Plaintiff Rossin is a resident of New York State, County of Westchester. At all times relevant, Rossin was employed by GF55 to perform and assist GF55 with interior design services. Rossin is married to Gross.

6. Defendant/Debtor, Shane is a citizen of the United States and a resident of the State of New York in Kings County. Upon information, Shane's current place of residence is 606 Koscuiszko Street, Apt. 2A, Brooklyn, New York 11221. From 2008 to September 5, 2014, Shane served as GF55's sole bookkeeper and human resources manager.

## BACKGROUND FACTS COMMON TO ALL CAUSES OF ACTION

### A. Shane's Embezzlement Scheme[1]

7. From approximately 2011 to 2014, Shane conspired to and engaged in a scheme to defraud and steal from Plaintiffs and in fact, did steal from Plaintiffs at least $754,538.96 ("GF55 and Rossin Embezzled Funds"). Taking advantage of the trust Plaintiffs placed in Shane, as their bookkeeper, Shane used Plaintiffs' accounts as his own private bank to pay his own personal expenses and to finance separate businesses for himself and family members. Shane also set aside GF55 and Rossin Embezzled Funds to support the lifestyle, retirement and long term care of his mother and step-father. Shane, acting as agent for and on behalf of his co-conspirators, covered up embezzlements by falsifying Plaintiffs' financial records and creating shell companies to receive the misappropriated funds.

---

[1] Shane played the central role as the hub of a conspiracy to defraud and steal from Plaintiffs, in that regard, with his unfettered access to Plaintiffs' accounts and financial information, Shane acted as agent for Munari Shane, Ira and Perrie Gurfein, Blue Pinstripe, and Ledger Logics, his "co-conspirators" to execute unauthorized transactions from GF55 and Rossin Accounts into accounts owned or controlled by Shane and his co-conspirators.

B.      **Overview of Shane's Embezzlement from GF55**

8. During the period from approximately September 2011 to September 2014, Shane, conspired to steal and did steal funds from GF55 bank accounts and credit card accounts located in New York (collectively "GF55 Accounts"), in the amount of at least $383,569.90 ("GF55 Embezzled Funds").

9. In addition, in July 2014, Shane conspired to and did fraudulently secure a loan in New York for his and his co-conspirators benefit using GF55's and Gross' personal information and finances.

10. The GF55 Embezzled Funds were funneled into Style Bar and Blue Pinstripe Accounts. Shane used the GF55 Embezzled Funds to renovate, launch and operate Style Bar Florida, which Shane and his co-conspirators jointly owned and operated; to pay his and his co-conspirators salaries and expenses, both business-related and personal; and to finance a lifestyle that their legitimate income could not otherwise support. Upon information and belief, Shane also set aside GF55 Embezzled Funds to support his mother and step-father's retirement and long-term care.

11. During the period from approximately September 2011 to September 5, 2014, Shane falsified transactions in GF55's books and records, including its financial statements and payroll statements, to conceal and disguise from GF55 the GF55 Embezzled Funds.

12. Shane and his co-conspirators did not have permission or authority to use any GF55 Accounts for any reasons unrelated to GF55's business.

13. The only individuals who had access to GF55's Accounts and could make transfers from them were Shane and the three GF55 Partners.

C. **Overview of Shane's Embezzlement from Rossin**

14. Shane and his co-conspirators, without permission or authority to do so, conspired to use and did use Rossin's personal credit cards, including her American Express credit card and American Express credit card reward program miles ("Reward Miles"), and Rossin's personal bank accounts (collectively "Rossin Accounts") to steal at least $370,969.06 between approximately 2012 and September 2014 ("Rossin Embezzled Funds").

15. Shane did not have permission or authority to use the Rossin Accounts for unauthorized purposes, including but not limited to taking money for Shane, his co-conspirators, or for the launch and operation of Style Bar Florida.

16. The only individuals who had access to the Rossin Accounts were Shane, Rossin, and Gross.

17. In addition, Shane and his co-conspirators fraudulently induced Rossin to invest $75,000.00 in Style Bar Florida through material misrepresentations about, *inter alia*, the source of Style Bar's financing and its financial health.

C. **Shane's Employment at GF55**

18. From 2008 until September 5, 2014, Shane was employed at GF55 as GF55's sole bookkeeper and human resources manager, a position that he and his co-conspirators exploited in order to advance the aims of their conspiracy. In that role, Shane was responsible for managing GF55's assets and finances. Shane's responsibilities included managing GF55's Accounts receivable and payable (including making payments to outside vendors from GF55 Accounts for GF55-related business), managing

employee payroll, managing the GF55 Accounts, and training new employees on GF55's Employment Handbook.

19.     Shane's gross annual salary from GF55 was $66,000.00. He did not receive additional compensation for overtime or other expenses, with the exception of a "MetroCard" for New York City public transportation.

20.     Shane was authorized to make payroll payments to himself for his $66,000.00 salary only. He was not authorized to transfer any additional funds from the GF55 Accounts to himself, to his co-conspirators, or to third parties for his and his co-conspirators benefit or to satisfy his or his co-conspirators' debts.

D.     **Shane's Employment with Rossin**

21.     From May 2010 until September 2014, Rossin employed Shane to manage Rossin's personal finances. Shane's responsibilities included paying Rossin's credit card bills, including Rossin's American Express credit card, and managing Rossin's personal bank accounts ("Rossing Accounting Services"), a position which, like his employment with GF55, he and his co-conspirators exploited to advance the goals of their conspiracy. Rossin relied on Shane to manage the Rossin Accounts because Rossin was not able to do so herself.

22.     For the Rossin Accounting Services, Rossin paid Shane $300 a month. Rossin did not pay Shane any overtime or bonuses, with the exception of an additional approximately $1,200.00 over the course of his employment. Rossin did not authorize or make any other payments to Shane.

**E.      Shane's Embezzlement from GF55**

23.     As detailed above, Shane conspired with his co-conspirators to steal and did steal from GF55, and they knowingly benefitted from GF55 Embezzled Funds. Shane embezzled at least $383,569.90 from GF55.

24.     Shane, as bookkeeper for GF55, and acting as agent for and in concert with his co-conspirators, created a series of fictitious financial statements and reports, which he provided to GF55 to conceal and disguise his theft of at least $383,569.90 from GF55.

25.     Shane, acting as agent for and in concert with his co-conspirators, also fraudulently secured a loan for $35,000.00 through his unauthorized use of the personal financial information of GF55 and Gross.

**F.      Shane's Embezzlement from Rossin**

26.     As detailed above, Shane conspired with his co-conspirators to steal and did steal from Rossin, and they knowingly benefitted from Rossin Embezzled Funds. Shane stole at least $370,969.06 from Rossin.

**G.      Shane's Indictment, Arrest, Conviction, and Judgments of Restitution**

27.     As a result of the foregoing, a grand jury of the County of the New York was impaneled and Shane was indicted (under Ind. No. 1490/2015) for the crime of Grand Larceny in the Second Degree, in violation of Penal Law § 155.40(1), on three counts (the "Indictment"). A copy of the indictment is annexed hereto as **Exhibit A**.

28.     Subsequently, pursuant to the Indictment, Shane was arrested and charged with three counts of Grand Larceny in the Second Degree, under New York Penal Law § 155.40(1).

29. On December 14, 2015, Shane appeared before the New York State Supreme Court, Criminal Part 51, Justice Obus, and pleaded guilty to Grand Larceny.[2]

30. On March 3, 2016, Shane appeared for sentencing before the New York State Supreme Court, Criminal Part 51, Justice Obus, and in an allocution to the court, Shane admitted his guilt.[3]

31. Having been convicted of three counts of Grand Larceny under New York Penal Law § 155.40(1), upon information and belief, Shane was given an indeterminate prison sentence of 2 to 6 years.

32. It is upon information and belief, that Shane served nearly 2 years of his prison sentence and was conditionally released subject to the terms and conditions of his parole.

*(i)    GF55's Judgment of Restitution*

33. Having been convicted of three counts of Grand Larceny under New York Penal Law § 155.40(1), as part of his sentence, on March 4, 2015, the criminal court entered a Judgment Order of Restitution, pursuant to Article 420 of the Criminal Procedure Law, granting GF55 a Judgment of Restitution against Shane in the total amount of **$383,569.90** (the "GF55 Judgment"). A copy of the GF55 Judgment is annexed hereto as **Exhibit B**.

---

[2] A transcript of the December 14, 2015 appearance is forthcoming and will be supplemented as **Exhibit D** to this complaint.

[3] A transcript of the March 3, 2015 appearance is forthcoming and will be supplemented as **Exhibit E** to this complaint.

*(ii)    Rossin's Judgment of Restitution*

34. Having been convicted of three counts of Grand Larceny under New York Penal Law § 155.40(1), as part of his sentence, on March 4, 2015, the criminal court entered a Judgment Order of Restitution, pursuant to Article 420 of the Criminal Procedure Law, granting Rossin a Judgment of Restitution against Shane in the total amount of **$370,969.06** (the "Rossin Judgment"). A copy of the Rossin Judgment is annexed hereto as **Exhibit C**.

### AS AND FOR A FIRST CAUSE OF ACTION
### 11 U.S.C. sec 523(a) (4)
### (Objection to Discharge of the GF55 Judgment)

35. Plaintiffs repeat and reiterate each and every allegation contained in paragraphs 1 through 34 inclusive, as if fully set forth herein.

36. As a result of Shane's embezzlement from GF55, he was convicted of three counts of Grand Larceny under New York Penal Law § 155.40(1).

37. As part of his sentence, Shane was ordered to pay restitution in the amount of $383,569.90 to GF55 pursuant to the GF55 Judgment. *See* Exhibit B.

38. GF55 objects to the dischargeability of the GF55 Judgment in the sum of $383,569.90 pursuant to 11 U.S.C. sec 523 (a) (4) on the ground that Shane's actions as set forth herein, for which he was convicted, constituted fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

39. Accordingly, the GF55 Judgment should be excepted from Shane's discharge pursuant to 11 U.S.C. sec 523(a) (4).

## AS AND FOR A SECOND CAUSE OF ACTION
## 11 U.S.C. §§ 523(a) and 105(a)

40. Plaintiffs repeat and reiterate each and every allegation contained in paragraphs 1 through 39 inclusive, as if fully set forth herein.

41. If the Court sustains any or all of the Objections to dischargeability set forth herein, GF55 requests that the Court authorize the entry of a money judgment against Shane for the amount of money determined by the Court to <u>not</u> be dischargeable.

## AS AND FOR A THIRD CAUSE OF ACTION
## 11 U.S.C. sec 523(a) (4)
### (Objection to Discharge of the Rossin Judgment)

42. Plaintiffs repeat and reiterate each and every allegation contained in paragraphs 1 through 41 inclusive, as if fully set forth herein.

43. As a result of Shane's embezzlement from GF55, he was convicted of three counts of Grand Larceny under New York Penal Law § 155.40(1).

44. As part of his sentence, Shane was ordered to pay restitution in the amount of $370,969.06 to Rossin pursuant to the Rossin Judgment. *See* Exhibit __

45. Rossin objects to the dischargeability of the Rossin Judgment in the sum of $370,969.06 pursuant to 11 U.S.C. sec 523 (a) (4) on the ground that Shane's actions as set forth herein constituted fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

46. Accordingly, the Rossin Judgment should be excepted from Shane's discharge pursuant to 11 U.S.C. sec. 523(a) (4).

## AS AND FOR A FOURTH CAUSE OF ACTION
## 11 U.S.C. §§523(a) and 105(a)

47. Plaintiffs repeat and reiterate each and every allegation contained in paragraphs 1 through 36 inclusive, as if fully set forth herein.

48. If the Court sustains any or all of the Objections to dischargeability set forth herein, Rossin requests that the Court authorize the entry of a money judgment against Shane for the amount of money determined by the Court to <u>not</u> be dischargeable.

**WHEREFORE**, Plaintiffs, demand judgment on the first and third causes of action denying the Debtor, Christopher L. Shane a/k/a Christopher Lawrence Shane a/k/a Christopher Shane, dischargeability of his indebtedness to GF55 in the sum of $383,569.90 and of his indebtedness to Rossin in the sum of $370,969.06, and on the second and fourth causes of action directing the entry of a money judgment against Shane and in favor of GF55 in the sum of $383,560.90 and in favor of Rossin in the sum of $370,969.06, together with interest and the costs and disbursements of this action, and such other and further relief as the Court deems just and proper.

Dated: White Plains, New York
       August 15, 2018

                                WILSON, ELSER, MOSKOWITZ,
                                EDELMAN & DICKER LLP
                                *Attorneys for Plaintiffs*


                                By: s/ <u>David L. Tillem</u>
                                    David L. Tillem
                                    Daniel B. Fix

                                1133 Westchester Avenue
                                White Plains, New York 10604-3407
                                Tel.:   (914) 872-7104
                                Fax:   (914) 323-7001
                                E-mail: <u>david.tillem@wilsonelser.com</u>
                                                <u>daniel.fix@wilsonelser.com</u>

7186599v.1

TO: Law Offices of Lorna J. LaMotte PLLC
    Lorna Lamotte, Esq.
    65 Broadway, Suite 839
    New York, New York, 10006
    Tel: (212) 430-6516
    Fax: (646) 390-7966
    E-mail: lorna.lamotte@yahoo.com
    *Attorneys for Debtor, Christopher L. Shane*
    *a/k/a Christopher Lawrence Shane a/k/a Christopher Shane*

    Christopher L. Shane
    606 Koscuiszko Street, Apt. 2A
    Brooklyn, New York 11221

For Information Purposes Only To:

    John S. Pereira, Trustee
    Pereira & Sinisi, LLP
    641 Lexington Avenue, 13th Floor
    New York, New York 10022